OPINION
 

 SHERRY RADACK, Chief Justice.
 

 Appellant, Braden St. John Brown, filed suit against his employer, Swett
 
 &
 
 Crawford of Texas, Inc. f/d/b/a Insurance Brokers Services, Inc. of Texas (“IBS”), and his supervisor at IBS, Matt Galtney, alleging that they (1) wrongfully expelled him from a partnership that he had entered into with Galtney; (2) refused to pay him a bonus that he had earned; (3) fraudulently induced him to leave his previous employment by representing that he would continue to be Galtney’s “partner” at IBS; (4) tortiously interfered with his relations with, and made defamatory statements about him to, prospective employers; and (5) that IBS negligently hired and supervised Galtney. Galtney and IBS filed a motion for summary judgment, which the trial court granted. We affirm.
 

 I. BACKGROUND
 

 Braden St. John Brown is a wholesale insurance broker. Wholesale brokers act as middlemen between retail insurance agents and insurance companies, and the insurance companies pay the wholesale broker a “gross commission,” which is a percentage of the premium for each policy sold.
 

 Brown met Galtney in 1994, while they were both working for Jarrett Insurance Brokers (“Jarrett”). While at Jarrett, they were treated on the company’s books as one person, i.e., they were allocated a gross salary and paid gross commissions, which- they split in an agreed-upon proportion. Jarrett, however, paid each of them by way of a separate check, which reflected their split of the commissions.
 

 In 1999, Galtney met a former business acquaintance, Blake Bartnick, who was the president of IBS in Dallas. Galtney and Bartnick began discussing the possibility of Galtney’s opening a Houston office for IBS. Galtney indicated that he wished to bring Brown with him to IBS, and began negotiating with IBS on behalf of himself and Brown.
 

 IBS eventually hired both Brown and Galtney. The offer they accepted included a base salary of $590,000, 42% of which went to Brown ($247,800) and 58% of which went to Galtney ($342,200). There was a potential for a bonus based on new business written for IBS by “Houston Team One,” which is how IBS referred to the team consisting of Brown and Galtney. The bonus to “Houston Team One” was also to be split in the same proportion as the base salary. Thereafter, the base salary would be adjusted yearly and would be paid to Brown and Galtney as a draw against the gross commissions that they generated. Any amount above the draw would be divided equally between Houston Team One and IBS, and Houston Team One would divide its half of the gross commission in a 42:58 ratio between Brown and Galtney.
 

 Brown and Galtney were both W-2 salaried employees of IBS, and Galtney, as the
 
 *377
 
 executive vice-president in charge of the Houston office, was Brown’s supervisor. Brown acknowledged that he was an at-will employee of IBS.
 
 [1]
 

 On July 31, 2000, IBS fired Brown after problems attributed to him were discovered in several of the files that he had been handling. Brown was offered a severance, which included full pay and benefits through September 30, 2000, and a payment of a year-end bonus based upon gross commissions earned through the date of his termination.
 
 [2]
 
 Brown rejected the bonus offered by IBS by writing ‘"VOID” on the face of the bonus check and returning it.
 

 IBS and Galtney filed both traditional and no-evidence motions for summary judgment. Brown filed a motion for partial summary judgment on his partnership and bonus claims. The trial court granted IBS’s and Galtney’s motions for summary judgment and denied Brown’s motion for partial summary judgment. This appeal followed.
 

 II. PROPRIETY OF SUMMARY JUDGMENT
 

 A. STANDARDS OF REVIEW
 

 After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R.Civ. P. 166a(i);
 
 Brewer & Pritchard, P.C. v. Johnson,
 
 7 S.W.3d 862, 866 (Tex.App.Houston [1st Dist.] 1999),
 
 aff'd,
 
 73 S.W.3d 193 (Tex.2002). The motion must specify which essential elements of the opponent’s claim or defense lack supporting evidence.
 
 See Brewer & Pritchard,
 
 7 S.W.3d at 866-67. Once the party seeking the no-evidence summary judgment files a proper motion, the respondent must bring forth evidence that raises a fact issue on the challenged elements.
 
 See Jackson v. Fiesta Mart, Inc.,
 
 979 S.W.2d 68, 71 (Tex.App.Austin 1998, no pet.). The party with the burden of proof at trial has the burden of proof in the summary judgment proceeding.
 
 Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,
 
 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The respondent need not “marshal its proof’ as for trial but need only “point out” evidence that raises a fact issue on the challenged elements.
 
 Howell v. Hilton Hotels Corp.,
 
 84 S.W.3d 708, 715 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).
 

 The standard of review in an appeal from a traditional summary judgment requires a defendant who moved for a summary judgment on the plaintiffs causes of action (1) to show there is no genuine issue of material fact as to at least one element of each of the plaintiffs causes of action or (2) to establish each element of the defendant’s affirmative defense.
 
 Cathey v. Booth,
 
 900 S.W.2d 339, 341 (Tex.1995). In reviewing a traditional or a no-evidence summary judgment, we assume all the evidence favorable to the nonmovant is true, indulge every reasonable inference in favor
 
 *378
 
 of the nonmovant, and resolve any doubts in favor of the nonmovant.
 
 Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,
 
 51 S.W.3d 573, 577 (Tex.2001). When, as here, the trial court’s summary judgment order does not specify the ground or grounds on which summary judgment is rendered, we will affirm the summary judgment if any of the grounds stated in the motion is meritorious.
 
 Id. (citing Carr v. Brasher,
 
 776 S.W.2d 567, 569 (Tex.1989)).
 

 B. PARTNERSHIP CLAIMS
 

 The parties filed cross-motions for summary judgment on Brown’s partnership claims. Specifically, IBS and Galtney contended there was no evidence to raise a fact issue concerning whether or not Brown and Galtney/IBS had entered into a partnership agreement. In issue one on appeal, Brown contends the trial court erred by granting IBS/Galtney’s motion for summary judgment on his partnership claims.
 

 Article 2.03 of the Texas Revised Partnership Act (“TRPA”) sets forth five factors to consider in determining whether a partnership has been created. Those factors include (1) the receipt or right to receive a share of profits of the business; (2) the expression of an intent to be partners of the business; (3) the participation or right to participate in control' of the business; (4) the sharing of or agreement to share losses of the business or liability for claims by third parties against the business; and (5) the contribution of or an agreement to contribute money or property to the business. Tex.Rev.Civ. Stat. Ann. art. 6132b-2.03(a) (Vernon Supp.2004-2005).
 

 The Supreme Court of Texas has held that, to establish a partnership or joint venture, a plaintiff must show (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right or control or management of the enterprise.
 
 Schlumberger Tech. Corp. v. Swanson,
 
 959 S.W.2d 171, 176 (Tex.1997).
 

 IBS and Galtney contend that Brown’s partnership claims fail as a matter of law because the evidence conclusively establishes that he had no right to receive a share of the profits of the business because his salary and bonus compensation package was merely compensation for the services of an at-will employee. We agree.
 

 The TPRA provides that “sharing or having a right to share gross returns or revenues” is not indicative of a partnership arrangement. Tex.Rev.Civ. Stat. Ann. art. 6132b-2.03(b)(3) (Vernon Supp.2004-2005). Additionally, the supreme court has held that an essential element of a partnership is “a community of profit, an interest in the profits as profits, as distinguished from an interest therein as compensation.”
 
 Tanner v. Drake,
 
 124 Tex. 395, 78 S.W.2d 162, 163 (1935). The supreme court explored this concept further in
 
 Schlumber-ger Technology Corp.
 
 959 S.W.2d at 176. In
 
 Schlumberger,
 
 two brothers were hired by a mining company to assist in developing an offshore mining operation.
 
 Id.
 
 at 173. In return, the brothers were paid a consulting fee and a royalty in any diamonds mined through the project.
 
 Id.
 
 When a potential investor in the project pulled out, the brothers sued the investor alleging that it had violated its fiduciary duty as a partner.
 
 Id.
 
 at 174. The supreme court held that the brothers were not partners of the joint venture, but were receiving compensation for services rendered, not a share of the profits of the venture.
 
 Id.
 
 at 176. In so holding, the court stated as follows:
 

 Entitlement to a royalty based on gross receipts is not profit sharing.
 
 See
 
 Tex. Rev.Civ. Stat. Ann. art. 6132b, § 7(3)
 
 *379
 
 (sharing gross returns does not itself establish partnership);
 
 see also Patton v. Callaway,
 
 522 S.W.2d 252, 256 (Tex.Civ.App.-El Paso 1975, writ ref d n.r.e.). Of course, the payment of consultation fees is not the sharing of profits. Such payments are compensation for services rendered and are unrelated to the venture’s profits.
 
 See Grimmett v. Higginbotham,
 
 907 S.W.2d 1, 2-4 (Tex.App.-Tyler 1994, writ denied) (weekly compensation unrelated to financial requirements of business is no evidence of agreement to share profits or losses);
 
 Gutierrez v. Yancey,
 
 650 S.W.2d 169, 172 (Tex.App.-San Antonio 1988, no writ) (partners must participate in profits and share them as principals of business and not as compensation).
 

 Id.
 

 The undisputed evidence in this case shows that Brown was entitled to receive a base salary plus 42% of half of the gross commissions attributable to business written out of IBS’s Houston office. Brown’s base salary, like the consulting fee charged by the brothers in
 
 Schlumberger,
 
 cannot be considered a share of profits. Similarly, Brown’s portion of the gross commissions, like the royalty interest paid to the brothers in
 
 Schlumberger,
 
 was compensation for services rendered to IBS, not an interest in the overall profits of IBS. That IBS agreed to divide Brown’s and Galt-ney’s portion of gross commissions in a proportion that Brown and Galtney had agreed was appropriate does not change the nature of the bonus from compensation to profits.
 

 Because there was no evidence that Brown shared, or had the right to share profits, IBS and Galtney negated an essential element of Brown’s partnership claims. Accordingly, the trial court did not err in granting Galtney’s and IBS’s motion for summary judgment on these claims.
 

 Accordingly, we overrule Brown’s first issue.
 

 C. FRAUD AND CONSPIRACY
 

 In his fourth amended petition, Brown claimed that he was a victim of a fraud and conspiracy between IBS and Brown to remove him from the “partnership.” In his brief, Brown claims that “[a] representation and promise was made to Brown that he would continue to be Galtney’s partner while at IBS.”
 

 The basis of this claim is Brown’s contention that he was wrongfully induced to leave his prior employment with promises that he would continue in his “partnership” with Galtney at IBS. As such, this claim is grounded on the premise that he and Galtney were “partners” and that he was fraudulently expelled from the partnership in order to gain control of his “book of business.”
 

 However, Brown and Galtney were not partners, as a matter of law, but were at-will employees of IBS. Furthermore, the record shows that they were under a similar financial arrangement while working at their previous employer, Jarrett Insurance Brokers. Because Brown could not have been fraudulently induced into continuing a “partnership” that never existed, his fraud and conspiracy claims fail.
 

 As we have already stated, Brown was an at-will employee of IBS. Brown’s status as an at-will employee precludes his claim for fraudulent inducement as a matter of law.
 
 See Haase v. Glazner,
 
 62 S.W.3d 795, 798 (Tex.2001) (stating that “[wjithout a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim”). There was simply no enforceable agreement to continue Brown’s employment at IBS.
 
 See also Leach v. Conoco, Inc.,
 
 892 S.W.2d 954, 961 (Tex.App.-Houston [1st Dist.]1995, writ
 
 *380
 
 dism’d w.o.j) (“An ‘at will’ employee is barred from bringing a cause of action for fraud against his employer based upon the employer’s decision to discharge the employee.”). Similarly, Galtney, another at-will employee of IBS, was not in a position to promise Brown that his employment at IBS would continue indefinitely, and any reliance on such a statement by Brown would have been unreasonable.
 
 [3]
 

 Because Brown cannot allege a cause of action for fraud in connection with his termination as an at-will employee, the trial court did not err in granting IBS’s and Galtney’s motions for summary judgment on this issue.
 

 Accordingly, we overrule Brown’s second issue.
 

 D. ENTITLEMENT TO BONUS
 

 In his fourth amended petition, Brown claimed that he was entitled to a bonus in the amount of $79,700 for the year 2000. The record shows that IBS calculated his bonus at $10,263, the tender of which Brown refused. Brown and IBS and Galt-ney filed cross-motions for summary judgment on the bonus issue. The trial court granted IBS’s and Galtney’s motion and denied Brown’s motion. In his third issue on appeal, Brown contends that the trial court erred by ruling in favor of IBS and Galtney. .
 

 One of the grounds upon which IBS and Galtney relied was judicial estop-pel. Specifically, IBS and Galtney contended that Brown was judicially estopped from claiming entitlement to a bonus because he had filed a petition in bankruptcy declaring that the estimated value of his assets was under $50,000.
 

 The doctrine of judicial estoppel, as it relates to bankruptcy pleadings, has been described as follows:
 

 Judicial estoppel is a common law principle that applies when a party tries to contradict his or her own sworn statement given in prior litigation.
 
 See Brandon v. Interfirst Corp.,
 
 858 F.2d 266, 268 (5th Cir.1988). It is designed to protect the integrity of the judicial process by preventing a party from “playing fast and loose” with the courts to suit the party’s own purposes.
 
 Ergo Science, Inc. v. Martin,
 
 73 F.3d 595, 598 (5th Cir.1996). The primary purpose of the doctrine is not to protect litigants, but rather the integrity of the judiciary.
 
 See Interfirst Corp.,
 
 858 F.2d at 268. In other words, it is used to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage.
 
 See Andrews,
 
 959 S.W.2d at 649.
 

 Debtors in a bankruptcy action have an absolute duty to report whatever interests they hold in property, even if they believe the asset is worthless or unavailable to the bankruptcy estate.
 
 See In re Yonikus,
 
 974 F.2d 901, 904 (7th Cir.1992). Because of the broad scope of § 541(a), a potential personal injury claim that arose prepetition is property of the estate that must be reported. 11 U.S.C.A. § 541(a) (West 1993);
 
 see In re Allen,
 
 179 B.R. 818, 820 (Bankr.E.D.Tex.1995). When a cause of action accrues before the date the bankruptcy petition is filed, the claim is an interest that the debtor possesses when he or she files the bankruptcy petition.
 
 See Sizemore v. Arnold,
 
 647 N.E.2d 697, 699 (Ind.Ct.App.1995).
 

 
 *381
 

 Stewart v. Hardie,
 
 978 S.W.2d 208, 208(Tex.App.-Fort Worth 1998, pet. denied).
 

 However, there are limitations to the doctrine of judicial estoppel based upon bankruptcy pleadings.
 
 See Thompson v. Cont’l Airlines,
 
 18 S.W.3d 701, 708 n. 1 (Tex.App.-San Antonio 2000, no pet.);
 
 In re Coastal Plains, Inc.,
 
 179 F.3d 197, 206-07 (5th Cir.1999). The doctrine of judicial estoppel may be applied only when (1) the position of the party to be estopped is clearly inconsistent with its previous position; (2) the court has accepted the prior position; and (3) the party to be estopped has acted intentionally, not inadvertently.
 
 See In re Coastal Plains,
 
 179 F.3d at 206-07. In considering judicial estoppel for bankruptcy cases, the debtor’s failure to disclose is “inadvertent” only when the debtor lacks knowledge of the undisclosed claims or has no motive for their concealment.
 
 See id.
 
 at 210.
 

 In this case, Brown’s bankruptcy petition stating that he had assets under $50,000 clearly conflicts with his petition in this case, in which he claims that he is entitled to receive a $79,700 bonus. Additionally, Brown filed his bankruptcy petition
 
 after
 
 his petition in this case. Thus, at the time he filed his bankruptcy petition, he was certainly aware of the existence of the potential asset of his bonus claims in this case. Nor does Brown’s response to the summary judgment raise a fact question as to whether he omitted the asset inadvertently. Instead, Brown relies on the fact that the bankruptcy petition was ultimately dismissed on March 20, 2002, and thus, he seems to be contending that the bankruptcy court must not have accepted his prior position that he had less than $50,000 in assets. However, the bankruptcy was dismissed because the trustee “concluded that there [were] no assets to administer for the benefit of the creditors of this estate.”
 
 See Dallas Sales Co. v. Carlisle Silver Co.,
 
 134 S.W.3d 928, 932 (Tex.App.-Waco 2004, no pet.) (stating that bankruptcy court accepted debtors position by authorizing bankruptcy trustee to abandon assets of debtor’s bankruptcy estate because assets were of “no or little value to the estate.”). Accordingly, we conclude that the bankruptcy court accepted Brown’s position that he possessed less than $50,000 in assets. Furthermore, while the bankruptcy was pending, Brown’s creditors were prevented from attempting to collect their debts. Thus, Brown benefitted, at least temporarily, by filing the inconsistent bankruptcy petition.
 

 Because the position urged by Brown in the bankruptcy court — that he had fewer that $50,000 in assets, including potential assets — is inconsistent with the position urged in his petition in this case, we conclude that Brown is estopped from claiming that he is entitled to a $79,700 bonus. Therefore, the trial court did not err by granting IBS’s and Galtney’s motion for summary judgment on the bonus issue. Accordingly, we overrule Brown’s third issue.
 

 E. TORTIOUS INTERFERENCE AND DEFAMATION
 

 In his fourth issue on appeal, Brown contends the trial court erred by granting the defendants’ summary judgment motion on his claims of tortious interference with prospective business relationships and defamation. Both claims were premised on the allegation that “false, negative and unflattering comments [were] published by IBS and its agents within the industry following Brown’s termination.”
 

 To establish a cause of action for tortious interference with prospective business relationships, a plaintiff must show (1) there was a reasonable probability that the parties would have entered into a con-
 
 *382
 
 traetual relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant’s interference.
 
 Baty v. ProTech Ins. Agency,
 
 63 S.W.3d 841, 858 (Tex.App.-Houston [14th. Dist.] 2001, pet. denied). Because Brown’s tortious interference claim rests exclusively on the existence of an “independently tortious or unlawful” act by the defendants, we must first determine the validity of Brown’s defamation claim.
 

 To prove a cause of action for defamation, a plaintiff must prove that (1) the defendant published a statement of fact, (2) the statement was defamatory; (3) the statement was false, (4) the defendant acted negligently in publishing the false and defamatory statement; and (5) the plaintiff suffered damages as a result.
 
 See WFAA-TV, Inc. v. McLemore,
 
 978 S.W.2d 568, 571 (Tex.1998).
 

 In his brief, Brown does not point to a specific “statement of fact” that was made to any prospective employer. Instead, he states that “[s]everal of the contacts told Brown that they had received negative information from IBS and its agents.” A review of the record cites provided in Brown’s brief shows only that some of the people with whom Brown interviewed said that “there were some very unflattering things being said about [him].” One potential employer told Brown, “Well, we— somebody — a person in your company, and I’d rather not disclose who, received a phone call from somebody that I prefer not to disclose, and Braden, we just can’t do it.” Another potential employer stated that Brown’s “association with [Galtney] hurt him.” There was also reference in the record to an anonymous e-mail that was unflattering to Brown. During his deposition, Brown was asked the following:
 

 Question: What other evidence are you aware of, firsthand or secondhand, of you being blackballed in the industry by Matt Galtney or Blake Bartniek or anyone with IBS of Texas?
 

 ⅜ * ⅜ *
 

 Brown: Personally, every slammed door I received while trying to obtain a job doing what I did. And the exact words that Peter Willis Flemming told me while I was sitting in his office that “Matt called and said some very unflattering things about you.”
 

 Brown also claimed that a coworker at IBS, Jennifer Hixon, referred to him as “a walking E & 0.”
 
 [4]
 
 Mary Elizabeth Walker, a senior broker assistant at IBS, testified that Hixon said to her that Brown was a “walking E & 0.” However, Walker heard the statement straight from Hixon, not from “within the gossip circle.”
 

 Brown testified that Hixon sent a fax containing very disparaging comments about him to Galtney. Claudia Cox, a retail broker, and Karen Brooks, Cox’s assistant, told Brown that Hixon said “some very disparaging things” about him, but that the two women “tuned her out.”
 

 Hixon, herself, admitted that she had called Brown a “walking E & 0” and that she had made “negative comments” about Brown to people outside IBS.
 

 1. “Negative information,” unflattering emails, and “disparaging things”
 

 
 *383
 
 IBS and Galtney moved for a no-evidence summary judgment, contending that there was no evidence that the “negative information,” unflattering emails, and “disparaging things” that were said about Brown were defamatory or false. We agree. Because Brown did not provide any evidence about the substance of the “negative information,” unflattering emails and “disparaging things” that he contends IBS and Galtney said or wrote about him, there is nothing in the record to raise a fact question for the jury. Put simply, Brown failed to bring forth any evidence on two elements of his defamation claim,
 
 i.e.,
 
 that the “negative information,” unflattering emails, and “disparaging” things that were said about him were either defamatory or untrue. Accordingly, the trial court properly granted IBS’s and Galt-ney’s no-evidence motions for summary judgment on these claims.
 

 2. “Walking E & 0” statement
 

 The only specific, defamatory statement that Brown contends was made about him was Jennifer’s Hixon’s statement that Brown was “a walking E & 0.” In their motions for summary judgment, IBS and Galtney contend that Hixon’s statement was not an actionable statement of fact, but was her opinion. We agree.
 

 The First Amendment to the United States Constitution and article 1, section 8 of the Texas Constitution require a plaintiff to establish that the defendant published a false, defamatory statement of fact, rather than an opinion, as an essential element of a cause of action for libel.
 
 A.H. Belo Corp. v. Rayzor,
 
 644 S.W.2d 71, 79 (Tex.App.-Fort Worth 1982, writ refd n.r.e.);
 
 see Carr,
 
 776 S.W.2d at 570. In other words, the plaintiff must prove that the statements contained false, defamatory facts rather than opinions or characterizations. A.
 
 H. Belo Corp.,
 
 644 S.W.2d at 80. Whether a statement is an opinion or an assertion of fact is a question of law.
 
 Carr,
 
 776 S.W.2d at 570. An alleged defamatory statement of opinion requires an implication of undisclosed facts to be actionable.
 
 Bentley v. Bunton,
 
 94 S.W.3d 561, 584 (Tex.2002).
 

 There is no assertion of fact in Hixon’s statement that Brown was a “walking E & O.” Instead, the statement clearly expresses Hixon’s opinion that Brown was likely to perform his work in such a manner that IBS’s errors and omissions insurer would be required to provide coverage when he made a mistake. Similarly, there are no implied, but verifiable, facts in Hix-on’s statement.
 
 See id.
 
 at 585 (holding that opinion that judge was “corrupt” actionable because statement included implication that opinion was based upon verifiable facts). As such, Hixon’s reference to Brown as “walking E & 0” is not actionable.
 
 See Associated Press v. Cook,
 
 17 S.W.3d 447, 454 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (statement that plaintiff was “blight on law enforcement” was statement of opinion and amounted to “little more than name calling”). As such, the trial court properly granted summary judgment on this claim.
 

 Because the trial court properly granted summary judgment on Brown’s defamation claims, and because Brown’s tortious interference claim is based on the alleged tort of defamation, the trial court also properly granted summary judgment on Brown’s tortious interference claim.
 

 Accordingly, we overrule Brown’s fourth issue.
 

 F. NEGLIGENT HIRING AND SUPERVISION
 

 In his fourth amended petition, Brown claimed that IBS was negligent in the manner in which it hired and supervised Galtney and Hixon. IBS filed a mo
 
 *384
 
 tion for summary judgment on this claim, which the trial court granted.
 

 To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff.
 
 Castillo v. Gared, Inc.,
 
 1 S.W.3d 781, 786 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).
 

 As stated earlier, Brown cannot prove an actionable tort, i.e., defamation. Thus, his negligent hiring and supervision claims fail because of lack of causation. Accordingly, we overrule Brown’s fifth issue.
 

 G. VICARIOUS LIABILITY
 

 In his sixth issue on appeal, Brown contends that “in the event that the Trial Court’s Summary Judgment is reversed in whole or in part, [his claims for vicarious liability, vice-principal liability, single business enterprise and alter ego as theories of secondary, vicarious or derivative liability] should be remanded for trial along with any claim the Court remands for trial pursuant to this Appeal.” Because we have not found reversible error on any other issues raised by appellant, we need not address his sixth issue, and we decline to do so.
 

 III. CONCLUSION
 

 We affirm the judgment of the trial court.
 

 [1]
 

 . The document stated as follows:
 

 I further understand that I have the right to terminate my employment at any time for any reason and the Company retains a similar right to terminate my employment. In addition, I understand that no officer, supervisor or other employee of the Company, other than the President of the Company for which I work, has the authority to alter, orally or in writing, the terminable-at-will status of my employment.
 

 [2]
 

 . IBS calculated Brown's bonus as follows:
 

 "The total revenue generated through July 31, 2000 was $1,069,301. Fifty percent of that amount is $534,651. Mr. Brown’s 42% share is $224,553. Pursuant to the agreement, the $224,553 is reduced by $214,290 for the compensation Mr. Brown received through September 30, 2000. This includes $190,614 in salary, an auto allowance of $4,615, and accrued vacation in the amount of $19,061. Accordingly, Mr. Brown would receive, if anything, $10,263.”
 

 [3]
 

 . We note that there is no evidence that Galt-ney ever represented to Brown that he would be anything other than an at-will employee of IBS. Brown, in fact, signed an acknowledgment of his status as such.
 

 [4]
 

 . We assume that the phrase "walking E & O” refers to a person whose work perform-anee is likely to cause the company to file a claim with their errors and omissions insurer.