COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-290-CV

 

 

PHILIP HADLOCK                                                                 APPELLANT

 

                                                   V.

 

TEXAS
CHRISTIAN UNIVERSITY,                                            APPELLEES

MARY VOLCANSEK, SHARON 

FAIRCHILD, JEFFREY TODD, 

YUMIKO KEITGES, JEAN
KNECHT, 

AND WILLIAM POHL

 

                                              ------------

 

           FROM THE 348TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant Philip Hadlock appeals from a summary
judgment for Appellees Texas Christian University (ATCU@), Mary
Volcansek, Sharon Fairchild, Jeffrey Todd, Yumiko Keitges, Jean Knecht, and
William Pohl on Hadlock=s defamation claims.  Because we hold that Hadlock failed to point
out sufficient evidence to defeat Appellees=
no-evidence motion for summary judgment, we affirm.

Hadlock began working at TCU in 1998 as an
instructor of French.  He was appointed
to a tenure track position beginning in the fall of 1999.  Hadlock was given a positive performance
evaluation for each academic year through his five-year tenure probationary
period.  On January 21, 2004, Volcansek,
dean of the college in which Hadlock taught, provided her recommendation to
William Koehler, provost and vice chancellor at TCU, that Hadlock be granted
tenure and a promotion to associate professor.

The modern languages department held a meeting on
February 20, 2004, at which Fairchild, the department chair, discussed the
progress the department was making in its search for a professor of
German.  The parties dispute what
happened at the meeting, but everyone agrees that Hadlock and his wife, also an
untenured faculty member of the department, objected that they had not been
included in the search process. 
According to Appellees, Hadlock expressed his objections vehemently and
aggressively and Acast[] suspicion on the motives@ of the
search committee and other faculty members. 
According to Hadlock, he was not accusatory at the meeting and did not
rise out of his chair or use profanity, but he did become irritated and raise
his voice.








On February 23, 2004, Fairchild met with
Volcansek and described to her the February 20 meeting.  Two days later, on February 25, Fairchild and
tenured faculty members Knecht, Todd, Keitges, and Pohl (Athe
Faculty@) sent
to Volcansek a letter retracting their recommendation that Hadlock be granted
tenure and stating that they were concerned that Hadlock had violated TCU=s
Statement on Professional EthicsCguidelines
applicable to professors and instructors at the schoolCby
expressing disrespect to colleagues and by refusing to accept opinions that
differed from his own.  Volcansek
forwarded this letter to Koehler with a brief note of her own.

On March 8, the Faculty met with Hadlock and,
without informing him of the letters that had been sent to Koehler, told him
that the Faculty had serious concerns about his behavior.  Then on March 10, the Faculty gave to
Volcansek another letter regarding Hadlock; this letter was almost identical to
the letter of February 25.  Todd authored
another letter on March 22 describing behavior by Hadlock that the Faculty had
found to show disrespect for his colleagues. 
Volcansek forwarded this letter to Koehler, noting that in light of the
allegations contained within it, she withdrew her recommendation that Hadlock
be granted tenure.








Koehler ultlimately recommended denying tenure to
Hadlock, and TCU gave Hadlock a terminal contract for employment for the 2004B05
academic year.  According to Koehler, he
recommended denying Hadlock tenure because enrollment in the French program was
so low that an additional tenured professor would be a waste of resources.

Hadlock filed suit against Appellees for breach
of contract and defamation.  The trial
court granted partial summary judgment for Appellees on Hadlock=s breach
of contract claim, and he did not appeal from that judgment.

In Hadlock=s
defamation claims, he contended that (1) the Facutly had alleged in writing
that Hadlock had engaged in professional misconduct and had violated recognized
standards of professional ethics; (2) Fairchild had made a number of verbal
statements to colleagues at TCU and at other academic institutions to the
effect that Hadlock had engaged in misconduct; and (3) Volcansek had alleged in
writing that Hadlock had demonstrated hostility and a lack of respect toward
his colleagues and that if he were granted tenure he would hinder development
of a community of scholars in the department. 
Appellees filed a combined traditional and no-evidence motion for
summary judgment on these claims.  The
trial court granted the motion without specifying the ground or grounds on
which the motion was granted, and Hadlock appeals from that judgment.








After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.[2]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[3]  We review the evidence in the light most
favorable to the party against whom the no-evidence summary judgment was rendered.[4]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no-evidence summary judgment is not proper.[5]








When a
party moves for summary judgment under both rules 166a(c) and 166a(i), we will
first review the trial court=s
judgment under the standards of rule 166a(i).[6]  If the appellant failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether the appellee=s summary judgment proof
satisfied the less stringent rule 166a(c) burden.[7]

Hadlock
brings a Malooly point on appeal, asserting generally that the trial
court erred by granting summary judgment for Appellees.[8]  In Hadlock=s
arguments, he first attacks Appellees=
no-evidence summary judgment ground alleging that there was no evidence of a
defamatory communication.  He contends
that more than a scintilla of evidence raised a fact issue on this element.








Because
Appellees asserted a no-evidence motion, Hadlock had the burden to point out
evidence in support of the challenged elements in order to prevent summary
judgment.[9]  Hadlock had to specifically identify the
evidence he wished the trial court to consider; a trial court is not required Ato wade
through a voluminous record to marshal a respondent=s proof.@[10]  And the record in this case was
voluminous:  Hadlock=s own
evidence and the evidence of Appellees, which he incorporated as summary
judgment evidence, consisted of over 800 pages. 
Thus, we look to Hadlock=s
response to the motion and determine if he pointed out to the trial court
evidence raising a fact issue on Appellees=
no-evidence grounds.[11]








A
defamatory statement may be made orally or in writing.[12]  Slander is Aa false
oral statement that is published to a third person without a legal excuse,
which refers to an ascertainable person.@[13] Libel
is defamation in written or printed form.[14]  Not every statement about a person that
depicts the person in a negative light is actionable as libel.  AA libel
is a defamation . . . that tends to injure a living person=s
reputation and thereby expose the person to public hatred, contempt or
ridicule, or financial injury or to impeach any person=s
honesty, integrity, virtue, or reputation.@[15]  A statement Amay be
false, abusive, unpleasant, or objectionable to the plaintiff and still not be
defamatory in light of the surrounding circumstances.@[16]  Whether a statement is capable of a
defamatory meaning is a question of law for the court unless the statement is
ambiguous.[17]  To be actionable as defamation, a statement
must be an assertion of verifiable fact (that is, a statement that purports to
be verifiable); purely subjective assertions (that is, opinions) that do not
imply the existence of undisclosed facts or do not misconstrue the facts are
not actionable as defamation.[18]








We have
reviewed Hadlock=s response, and regarding his
slander claim against Fairchild, we are unable to find where Hadlock pointed to
any specific spoken statement by Fairchild as defamatory.  He alleged that Fairchild told Punch Shaw, a TCU
adjunct professor, that the February 20 meeting was the turning point on his
tenure and that until that meeting everything was fine.  Hadlock did not argue how such a statement
was defamatory or even expressly allege that it was defamatory.  And in the excerpt of Shaw=s
deposition pointed out by Hadlock, Shaw only said that he had been given the
impression that Hadlock was close to getting tenure and that he got the
impression that Asomething turned in that faculty
meeting@ because
he knew that after the meeting, the department no longer supported Hadlock=s
tenure.  He stated that Fairchild Anever
told [him] the particulars of the faculty meeting.@  Thus, Hadlock failed to point out any
evidence of a spoken defamatory communication by Fairchild to Shaw.[19]








Hadlock
also stated that in the March 8 meeting, those present Abegan
confronting [him] with allegations of misconduct.@  He failed to allege what allegations were
made or who made them or to point to any evidence of defamatory statements made
by Fairchild at the meeting.  Thus, he
failed to present any evidence of slander based on this meeting.  Because Hadlock did not point out any other
evidence of slander in his response, the trial court correctly granted summary
judgment on his slander claim.[20]

With
respect to his libel claim against Appellees, Hadlock referenced in his
response the two letters written by the Faculty and the two letters written by
Volcansek.  He stated that the Ageneral
tenor@ of the
letters was that he acted unethically and was guilty of misconduct and that the
letters contained Anumerous@
statements that were untrue.  But Hadlock
specifically pointed out only a few statements within those writings as being
defamatory.  We have considered each
statement pointed out by Hadlock and have determined that the statements are
not defamatory.

In his
response, Hadlock primarily took issue with Appellees=
characterization of his behavior as hostile or disrespectful.  The crux of Hadlock=s
defamation claim was his contention that Appellees had asserted that he acted
unethically and unprofessionally and was guilty of misconduct.  He cited Bentley for the proposition
that the Faculty=s opinions were actionable
because they implied the existence of verifiable facts demonstrating unethical
behavior.








What the
Faculty essentially said was that they believed his behavior showed disrespect
for the opinions of his colleagues, which in their opinion violated TCU=s
Statement on Professional Ethics, specifically the provision stating, AProfessors
do not discriminate against or harass colleagues.  They respect and defend the free inquiry of
associates.  In the exchange of criticism
and ideas professors show due respect for the opinions of others.@  The Faculty asserted that they believed
Hadlock had violated these criteria Aby
expressing disrespect of colleagues and refusing to accept opinions that differ
from his own.@

The Faculty
did not express their opinion so as to imply the existence of facts to
back up their opinion; rather, they set out verifiable assertions of fact and
then stated that, from those asserted facts, they formed the opinion that
Hadlock had shown disrespect for his colleagues.  Their opinions were purely subjective
assertions.








This
case is not like Bentley, where the defendant said, without giving facts
in support of his assertion, that the plaintiff was corrupt and assured his
audience that he had seen evidence to back up his claim, never telling the
audience what the facts were or what acts of the plaintiff constituted corrupt
behavior.[21]  Unlike the defendant in Bentley,
Appellees did not imply the existence of fact and then fail to disclose them C they
did not drop dark hints about Hadlock's unethical and unprofessional behavior
in a way that implied that they were basing their opinion on verifiable
facts.  They laid out the behavior that
they considered to be a problem, stated that such behavior was characteristic
of Hadlock=s attitude, and then stated that
their ethics rules required professors to show due respect for the opinions of
colleagues and that they believed his behavior violated that standard.  And we note that for the most part, Hadlock
did not dispute the facts Appellees set out in support of their opinion.[22]  Hadlock can disagree that it shows a lack of
respect for his colleagues to, for example, raise his voice in a faculty
meeting, but they are entitled to their opinions, and they are also entitled to
express those opinions.[23]  Appellees=
statements regarding their opinion about Hadlock=s
behavior violating TCU=s policies are not actionable as
defamation.








Although
Hadlock argued generally that Appellees had defamed him by accusing him of
acting unethically, he did point to a few specific assertions by Appellees that
he contended were defamatory.  One such
assertion was a statement in the March 22 letter that according to Hadlock
contended that he Atoo aggressively participated in
the decision to choose an outside consultant for the program degree.@  The letter actually said that the Faculty,
including Todd, Ahad felt Hadlock had been
unnecessarily acrimonious.@  The letter elaborated that Hadlock was Aincensed
that the matter had not been debated and that various candidates had not been
considered@ and that he reacted Avociferously@ to the
announcement that a candidate had been chosen. 
This statement does not appear to defame Hadlock; although it is not
flattering, it is not necessarily injurious to his reputation, especially
considering that the letter Hadlock referred to went on to say that Todd felt
that Hadlock had a point and proposed a meeting to discuss the issue and that
as a result of the meeting, the search for a consultant was reopened.  Furthermore, Todd did not appear to be
accusing Hadlock of any particular behavior other than expressing his views in
an acrimonious way.  Todd=s
statement that the Faculty found Hadlock=s manner
of expressing his disagreement to be acrimonious is clearly a subjective
assertion and therefore not actionable.[24]













Hadlock
also objected to Appellees=
statements regarding the February 20 meeting. 
In two of the letters, the Faculty stated that in the meeting, Hadlock Aexpressed
objections in an extremely vehement and aggressive manner, casting suspicion on
the motives of the search committee and other faculty members.@  While not expressly stating in his response
that this statement was defamatory, Hadlock did dispute its accuracyChe
stated that he Awas not accusatory of anything@ and
that he Adid not
question the motives of the people at the department meeting,@ and he
pointed to his deposition testimony to support his view of events.  In that testimony, he denied accusing anyone
of anything at the meeting but admitted that he had become irritated and had
raised his voice.  Furthermore, attached
to one of the letters that Hadlock alleged contained defamatory statements was
a February 22 email from Hadlock in which he stated that, with respect to the
search for a new German professor, AI find
it neither hostile nor unreasonable for faculty members to raise questions
about this matter, and I wonder about the motivations of anyone who would try
to silence or suppress those questions.@  Hadlock acknowledged that there was a dispute
in the meeting, that he expressed dissent, that he became irritated, and that
he raised his voice.  Thus, Hadlock did
not really dispute the gist of the Faculty=s
factual assertions but rather their characterization of his expression of
disagreement as Avehement@ and Aaggressive.@  But their view of his behavior was a purely
subjective assertion and not actionable as defamation.[25]

The only
purely factual assertion in the letters pointed out by Hadlock in his response
as defamatory were statements that on two occasions, he slammed a door on a
colleague.  He contended that these
statements were untrue and defamatory. 
We disagree that a statement that he slammed doors rises to the level of
defamation, unflattering though it may be.[26]  This is particularly true where the rest of
the letter contains factual assertions unchallenged by Hadlock as either untrue
or defamatoryCsuch as assertions that he left
meetings in a huff when he disagreed with decisions made in them, that he sent
a colleague an email Awonder[ing] about the motives of
anyone who would try to silence or suppress@ his
questions about the search for the German professor, that he sent another email
stating that to deny him a voice in the matter was Aa
hostile gesture,@ and that he sent Fairchild a
letter stating that TCU did not follow the academic tradition of considering
dissent and debate productive.  That is,
if the other statements were either true or not defamatory, then an assertion
that Hadlock slammed doors could not have injured his reputation.








Hadlock
did not point out in his response any other specific statements by Appellees as
being defamatory.  Because we have held
that the statements that Hadlock did point to as evidence of a defamatory
communication were not defamatory, the trial court did not err by granting a
no-evidence summary judgment on that ground.[27]  We overrule Hadlock=s issue.

Having
overruled Hadlock=s issue, we affirm the trial
court=s
judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

PANEL: 
DAUPHINOT and MCCOY, JJ.; and DIXON W. HOLMAN, J. (Senior Justice,
Retired, Sitting by Assignment).

 

DELIVERED:  February 26, 2009











[1]See Tex. R. App. P. 47.4.





[2]Tex. R. Civ. P. 166a(i).





[3]See Tex. R. Civ. P. 166a(i)
& cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002).





[4]King Ranch, Inc. v.
Chapman,
118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004); Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 197 (Tex. 2002); Morgan
v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000).





[5]Moore v. K Mart Corp., 981 S.W.2d 266, 269
(Tex. App.CSan Antonio 1998, pet.
denied).





[6]Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600
(Tex. 2004).





[7]Id.





[8]See Malooly Bros., Inc.
v. Napier,
461 S.W.2d 119, 121 (Tex. 1970) (stating that appellant=s assertion on appeal of
a broad point challenging the summary judgment in its entirety is sufficient to
allow argument as to all possible grounds on which summary judgment should have
been denied).





[9]See Tex. R. Civ. P. 166a(i)
& cmt.





[10]See DeGrate v. Executive
Imprints, Inc., 261 S.W.3d 402, 408 (Tex. App.CTyler 2008, no pet.); see
also Arredondo v. Rodriguez, 198 S.W.3d 236, 238 (Tex. AppCSan Antonio 2006, no
pet.); Tex. R. Civ. P. 166a(i) & cmt. (ATo defeat a motion made under paragraph (i), . .
. [a nonmovant=s] response need only
point out evidence that raises a fact issue on the challenged elements.@).





[11]See Tex. R. Civ. P. 166a(i)
& cmt.





[12]AccuBanc Mortg. Corp. v.
Drummonds,
938 S.W.2d 135, 147 (Tex. App.CFort Worth 1996, writ denied).





[13]Id.





[14]Id.; Tex. Civ. Prac. &
Rem. Code Ann. ' 73.001 (Vernon 2005).





[15]Tex. Civ. Prac. &
Rem. Code ' 73.001.





[16]Columbia Valley Reg=l Med. Ctr. v. Bannert, 112 S.W.3d 193, 198
(Tex. App.CCorpus Christi 2003, no
pet.); see also Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114
(Tex. 2000) (A[A]n allegedly defamatory
publication should be construed as a whole in light of the surrounding
circumstances.@); Phelan v. Texas
Tech Univ., No. 07‑07‑0171‑CV, 2008 WL 190741, at *11
(Tex. App.CAmarillo Jan. 23, 2008,
pet. denied) (mem. op.) (holding that, reading email as a whole in light of
surrounding circumstances, indirect reference to professor as a Acreep@ and writer=s description of
professor=s behavior as Adysfunctional@ were not defamatory).





[17]Turner, 38 S.W.3d at 114.





[18]Bentley v. Bunton, 94 S.W.3d 561, 583B84 (Tex. 2002); Brown
v. Swett & Crawford of Tex., Inc., 178 S.W.3d 373, 382B83 (Tex. App.CHouston [1st Dist.] 2005,
no pet.); see also Thomas-Smith v. Mackin, 238 S.W.3d 503, 507 (Tex.
App.CHouston [14th Dist.]
2007, no pet.).





[19]Brown, 178 S.W.3d at 382B83 (holding that because
plaintiff did not provide any evidence about the substance of the Anegative information,@ unflattering emails, and
Adisparaging things@ that he alleged were
defamatory, trial court correctly granted no-evidence summary judgment on
defamation claim based on those statements).





[20]See Tex. R. Civ. P. 166a(i).





[21]Bentley, 94 S.W.3d at 584.





[22]Those facts that he does
dispute are discussed below.  See
infra p. 15.





[23]See Thomas-Smith, 238 S.W.3d at 507; see
also Phelan, 2008 WL 190741, at *12 (holding that interdeparmental
email statements were not stigmatizing as a matter of law when terms Acreep@ and Adysfunctional@ were used in popular
rather than clinical sense and Appellant produced no evidence that statements
were stigmatizing other than statements themselves and his legal conclusion
that they were stigmatizing).





[24]See Thomas-Smith, 238 S.W.3d at 507
(holding that purely subjective assertions are not actionable as defamation).





[25]See id.





[26]Bentley, 94 S.W.3d at 587
(stating that a defamatory statement is one that is injurious to reputation).





[27]See Tex. R. Civ. P. 166a(i).