**Affirmed and Memorandum Opinion filed September 15, 2016.**



In the

# 𝕱𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔔𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-15-00507-CV

**TRACIE JACKSON, Appellant**

**V.**

**NAACP HOUSTON BRANCH, YOLANDA SMITH (IN HER OFFICIAL CAPACITY), AND NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE D/B/A NAACP, Appellees**

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-77429**

## M E M O R A N D U M   O P I N I O N

Appellant Tracie Jackson challenges the trial court's final summary judgment in favor of appellees NAACP Houston Branch, Yolanda Smith (in her official capacity), and the National Association for the Advancement of Colored People d/b/a NAACP on all of Jackson's causes of action. Concluding that the trial court did not err, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The NAACP is a nonprofit association consisting of Units, which include Branches, formed pursuant to the NAACP's Constitutions and Bylaws for Units. The NAACP seeks to enact and enforce state and federal laws designed to protect the civil rights of American citizens and to secure political, social, and economic equality. An individual can become a member of the NAACP subject to the consent of its Board of Directors if she agrees to abide by the NAACP's rules and policies and the Board's decisions, and if she pays her annual dues.

The NAACP Houston Branch is organized pursuant to the NAACP's Constitution and Bylaws. The Houston Branch is governed by an Executive Committee, including a Branch President. The Executive Director is in charge of the daily operations of the Houston Branch and reports to the Executive Committee. The Executive Director cannot serve on the Executive Committee. Yolanda Smith has been the Houston Branch's Executive Director since approximately 2000. Tracie Jackson was a member of the NAACP from September 2010 to the end of October 2011.

In 2006, the NAACP conducted an audit of the Houston Branch covering the years 2003 through 2005. This audit revealed accounting and recording issues, problems with soliciting donations and grants, and related-party transactions involving Smith's relatives. The Houston Branch responded to this audit; while it disagreed with certain findings, it agreed to admonish Smith.

In May 2010, Smith hired Jackson as an employment law staff attorney with the Houston Branch. Jackson's salary was funded by a Basic Legal Services (BLS) grant provided by the Texas Access to Justice Foundation (TAJF).

On or about June 14, 2010, Smith informed Jackson and other staff that the

Houston Branch could not meet payroll. Jackson and other employees expressed their concerns about not being paid to Smith and the Executive Committee. On or about June 29, 2010, the Houston Branch's Personnel Committee recommended adopting a new policy regarding grant-funded employees. The new policy was that such employees would be terminated at the expiration of the grant funding and they could reapply for their positions when the grant was renewed or a new grant was received. Jackson received a letter from Smith outlining the policy on July 30. On August 2, 2010, Jackson called the director of grants for TAJF, Jonathan Vickery, to inform him of the payroll concerns. When Vickery contacted Smith, she told Vickery that Jackson was a "problem employee" and "there were morale problems." The Executive Committee approved the new policy on August 16, 2010.

On August 31, 2010, Jackson's employment was terminated due to the expiration of the BLS grant funding her salary. In November 2010, Jackson reapplied and interviewed for the employment law staff position, but someone else was hired instead.

On the night of May 26, 2011, there was an incident at the Houston Branch. Certain members of the Executive Committee entered Smith's office while she was not there. After Smith returned, there was a heated exchange and Smith left the building with her computer hard drive. Smith was terminated. In June 2011, the NAACP placed Smith on paid administrative leave pending review and in July 2011 ultimately reinstated Smith as Executive Director. Also in July 2011, the NAACP suspended the membership of the Houston Branch President and those Executive Committee members involved in the May 26 incident.

In June 2011, the TAJF suspended the final installment of the Houston Branch's 2010-2011 grants based on its opinion that the Houston Branch was in

3

default of the grant agreements. In July 2011, the TAJF board of directors voted not to fund the Houston Branch's grant proposals for the next year.

Jackson pursued various proceedings. In November 2010, Jackson filed an unfair labor practices charge under the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*, with the National Labor Relations Board (NLRB). A complaint issued against the Houston Branch in February 2011, and there was a hearing before an administrative law judge in May 2011. On July 15, 2011, the administrative law judge issued its finding that Jackson's termination and the Houston Branch's refusal to rehire her violated section 8(a)(1) of the NLRA and recommended back pay and reinstatement. On October 12, 2012, the NLRB ultimately adopted the administrative law judge's decision and recommended order.

In July 2011, Jackson sued the NAACP, the Houston Branch, and Smith in federal district court for: violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; breach of fiduciary duties; negligent retention and hiring; tortious interference with contract; and defamation. Linda Dunson, another grant-funded attorney working at the Houston Branch who also was terminated and not rehired, and who was one of the suspended Executive Committee members involved in the May 26 incident, was added as a plaintiff. The district court dismissed all of their claims with prejudice, and Jackson and Dunson appealed. The Fifth Circuit Court of Appeals affirmed the dismissal with regard to the RICO claims but remanded the state-law claims. *See Jackson v. Nat'l Ass'n for the Advancement of Colored People*, 546 Fed. Appx. 438, 444 (5th Cir. 2013) (per curiam).

On July 9, 2011, the Houston Chronicle published an article entitled, "NAACP suspends executive panel here." Under a subheading entitled, "Lawsuit

4

filed July 1," the article provided details regarding the allegations contained in Jackson's federal lawsuit. In the article, Smith referred to Jackson as a "disgruntled employee."

In January 2014, Jackson and Dunson filed suit against the Houston Branch, Smith, and the NAACP in Harris County district court.[1] Dunson settled, and the trial court granted the parties' agreed motion to enter a take-nothing judgment on her claims. At the time of summary judgment, in her third amended complaint, Jackson alleged claims against the NAACP for breach of contract, breach of fiduciary duties, fraud, and negligent retention. Jackson alleged claims against the Houston Branch and Smith for breach of contract, breach of fiduciary duties, fraud, defamation per se, and failure to allow members to inspect financial records per section 252.010 of the Texas Business Organizations Code.

The NAACP filed a motion for summary judgment and attached exhibits.[2] The NAACP asserted both traditional and no-evidence grounds in its motion. With regard to all of Jackson's claims, the NAACP argued that: (1) they are preempted

---

[1] In her brief, Jackson asserts that the federal district court declined to hear the state-law claims pursuant to supplemental jurisdiction and that Dunson and she filed suit in state court within 60 days of the district court's dismissal.

[2] The NAACP attached the following documents to its motion: a declaration by Gil Ford, Sr., a director of Unit administration for the NAACP, dated December 30, 2014; the NAACP's Constitution; the NAACP's Bylaws for Units; documents related to a 2005 audit conducted by the Texas Workforce Commission; the NAACP's report on the audit of the Houston Branch dated May 15, 2006; the Houston Branch's response to the NAACP's 2006 audit dated September 1, 2006; the NLRB's October 12, 2012 order adopting the administrative law judge's decision; the administrative law judge's July 15, 2011 decision and recommended order; the May 31, 2011 termination letter from the Houston Branch President to Smith; emails dated June 21 and 25, 2010 from Ford to the Houston Branch Executive Committee; the membership suspension letters dated July 6, 2011 from the NAACP to the Houston Branch President and other Executive Committee members; the recommendation of the NAACP hearing panel and letter dated October 19, 2011 from the NAACP to Dunson affirming her suspension; and the letter dated October 19, 2011 from the NAACP to Smith regarding the dismissal of a formal complaint against her under article X of the Constitution by members of the Houston Branch.

by the NLRA and (2) they are precluded from review based on the doctrine of judicial nonintervention. With regard to breach of contract, the NAACP argued that there was no evidence of any breach of an enforceable contract. With regard to breach of fiduciary duties, the NAACP contended that there was no evidence that it owed any fiduciary duty to Jackson individually or that Jackson had a preexisting relationship of trust and confidence with the NAACP prior to her employment. With regard to fraud, the NAACP argued there was no evidence: of any actionable, material misrepresentation contained in the Constitution and Bylaws upon which Jackson could have detrimentally relied; that the NAACP knew, or was reckless as to whether, its organizational mission and objective were false; or that the NAACP intended Jackson to act on said falsehoods. With respect to negligent retention, the NAACP asserted there was no evidence that it owed a duty to Jackson with respect to Smith. The NAACP also argued that Jackson would have to establish that Smith committed an actionable tort against Jackson before the NAACP could be held liable for negligent retention. The NAACP further argued that even if it did owe Jackson a duty of care as to Smith, there was no evidence the NAACP breached its duty or that any purported breach was the proximate cause of Jackson's damages.

The Houston Branch and Smith also filed a motion for summary judgment and attached exhibits.[3] Like the NAACP, the Houston Branch and Smith argued that NLRA preemption and judicial nonintervention precluded all of Jackson's claims. With regard to breach of contract, the Houston Branch and Smith argued that there was no evidence of any breach of an enforceable contract. With regard

___

[3] The Houston Branch and Smith attached the following documents to their motion: the federal magistrate judge's memorandum, recommendation, and order signed May 18, 2012; the federal district court's order of adoption signed June 8, 2012; an affidavit by Smith dated April 10, 2015; the TAJF's Comparability Strategic Planning Committee Report dated March 18, 2008; and all the exhibits attached to the NAACP's summary judgment motion.

6

to breach of fiduciary duties, the Houston Branch and Smith maintained that there was no evidence that either the Houston Branch or Smith was a fiduciary to Jackson or that any breach of any asserted fiduciary duties proximately caused Jackson to suffer any compensable damages. With regard to fraud, the Houston Branch and Smith contended there was no evidence that they misrepresented the finances of the Houston Branch when hiring Jackson or that they misrepresented the status of the grant funding Jackson's employment. With regard to any fraud by nondisclosure, the Houston Branch and Smith argued that there was no evidence of a duty to disclose TAJF's suggested salary ranges based on any confidential or fiduciary relationship with Jackson. With respect to defamation, the Houston Branch and Smith asserted that as a matter of law the statements at issue were expressions of Smith's personal opinion, not actionable false statements of fact. They also contended that Smith's statement that Jackson was "disgruntled" was true. Finally, with regard to examination of books and records, the Houston Branch and Smith argued that Jackson did not have standing as a member to assert such a claim.

Jackson filed her opposition to the NAACP's and to the Houston Branch and Smith's motions and attached exhibits.[4] Jackson argued that the defendants did not

_____

[4] Jackson attached the following documents to her opposition: Smith's employment contract with the Houston Branch dated December 11, 2008; two affidavits by Dunson dated January 6, 2011, and January 12, 2015; a letter dated June 20, 2011 to the Houston Branch from the TAJF; an affidavit by Jackson dated January 12, 2015; copies of Dunson's NAACP membership cards and an NAACP membership renewal statement for Jackson; excerpts from the May 12, 2011 hearing before the administrative law judge; a Houston Chronicle article entitled, "NAACP suspends executive panel here," dated July 9, 2011; an email dated April 22, 2011 from Smith to legal counsel and the Personnel Committee of the Houston Branch and an email dated April 23, 2011 from the head of the Personnel Committee to the Houston Branch President, forwarded to Dunson; an NAACP Chief Operating Officer memorandum dated June 26, 2006 regarding Houston Branch NAACP audit results implementation plan; complaint by members of the Houston Branch against Smith under article X of the NAACP's Constitution; email dated June 25, 2011 from an Executive Committee member to Ford; notice of intent to appeal membership suspension email dated October 31, 2011; July 20, 2010 email from Dunson

prove as a matter of law that all of her claims were preempted by the NLRA or were barred by judicial nonintervention. Jackson further argued that the summary judgment evidence established material fact questions on her claims. Specifically, Jackson contended that the Constitution and Bylaws established the existence of the contract between the defendants and NAACP members. Jackson argued that the defendants owed her fiduciary duties as a member based on the Constitution and Bylaws. Jackson further asserted that the defendants owed members a fiduciary duty of obedience, loyalty, and care, and provided examples of the defendants' breaches. Jackson argued that the NAACP owed her and the public at large a duty with regard to Smith's negligent retention and breached that duty by returning Smith to her position in July 2011. Jackson contended that the NAACP had prior knowledge of Smith's fraudulent and negligent activities, which rendered her an unfit employee and caused the TAJF to suspend and not renew its grants. Jackson pointed to the NAACP's 2006 audit and to Smith's removal of the Houston Branch's computer as evidence of Smith's incompetence and to show that Jackson's injury of not being rehired and reinstated was foreseeable. Jackson next asserted that there was a fact issue regarding whether Smith's statements to Vickery and to the Houston Chronicle implied an assertion of fact that is objectively verifiable and that Smith's statement to Vickery was false. Finally, Jackson argued that Smith had a duty to disclose the TAJF grant salary requirements.

---

to Smith containing "Summary of Year to Date – IOLTA/BCLS Expenditures" spreadsheet; Houston Branch Personnel Committee June 29, 2010 meeting minutes; Executive Committee August 16, 2010 meeting minutes; Fifth Circuit per curiam opinion issued October 8, 2013; email exchange dated April 15, 2011 between Jackson and Smith regarding financial records request; excerpt from document alleged to be TAJF's grant rules and regulations; and letter from TAJF to NAACP dated July 12, 2011 and email exchange dated July 11 and 12, 2011 between executive director of TAJF and NAACP's assistant general counsel. Jackson also incorporated by reference all of the NAACP's exhibits and Smith's affidavit.

The trial court held a hearing and granted both motions for summary judgment dismissing all of Jackson's claims against the NAACP, the Houston Branch, and Smith. Jackson timely appealed.

## II. ANALYSIS

In her brief, Jackson raises eleven issues.[5] However, these issues all essentially reduce to what Jackson lists as her first issue—whether the trial court erred in granting the NAACP's and the Houston Branch and Smith's motions for summary judgment.

### A. Standard of review

We review the trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing either a no-evidence or traditional summary judgment motion, we must take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23–24 (Tex. 2000) (per curiam); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

A no-evidence motion for summary judgment is essentially a motion for a

---

[5] Jackson presents the following issues: (1) the trial court committed error in granting the NAACP's and the Houston Branch and Smith's motions for summary judgment pursuant to rule 166a(c) and 166a(i); (2) Jackson presented sufficient evidence to warrant judicial intervention in this case; (3) Jackson presented sufficient evidence to show that her Texas causes of action are not preempted; and she presented sufficient evidence to establish material questions of fact that (4) the Constitution and Bylaws created a contract with members, (5) the Constitution and Bylaws created an informal fiduciary duty owed to members, (6) all the defendants breached their fiduciary duties to members, (7) the Houston Branch and Smith defamed Jackson, (8) the NAACP negligently retained Smith causing harm to Jackson, (9) the Houston Branch and Smith committed fraud by nondisclosure causing Jackson harm, (10) the Houston Branch and Smith failed to allow Jackson to inspect the books and documents of the Houston Branch, and (11) the NAACP unlawfully expelled Houston Branch officers from the membership.

pretrial directed verdict. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The nonmovant is required to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id.*; *Timpte Indus.*, 286 S.W.3d at 310.

The party moving for a traditional summary judgment has the burden to show that no material fact issue exists and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Willrich*, 28 S.W.3d at 23. To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

Where, as here, a summary judgment fails to specify the grounds upon which the trial court relied for its ruling, we must affirm the judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 127 (Tex. App.—Houston [14th Dist.] 1994, no writ). Also, "when there are multiple grounds for

summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal." *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993); *see Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When a particular summary judgment ground goes unchallenged, we presume the validity of that ground and affirm the judgment. *Wilkinson v. USAA Fed. Sav. Bank Trust Servs.*, No. 14-13-00111-CV, 2014 WL 3002400, at *5 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied) (mem. op.); *PAS, Inc. v. Engel*, 350 S.W.3d 602, 608 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

We usually address no-evidence grounds first, but need not review them if we conclude we must affirm the ruling on traditional grounds. *McCoy v. FemPartners, Inc.*, 484 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

## B. Breach-of-contract claims against the NAACP, the Houston Branch, and Smith

To recover for breach of contract, a plaintiff must show: (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of the defendant's breach. *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

In their motions for summary judgment, the NAACP and the Houston Branch and Smith focused their no-evidence attack on the breach element of Jackson's contract claim. However, both in her opposition and on appeal, Jackson does not address or present evidence of breach and instead only argues that evidence of language contained in the NAACP's Constitution and Bylaws shows those documents established a contract with members. By failing to present any

evidence of breach in the trial court or any argument or authority related to such element on appeal, Jackson did not meet her summary judgment burden and has waived her contract claims. *See* Tex. R. Civ. P. 166a(i); *McMahan v. Greenwood*, 108 S.W.3d 467, 485 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Therefore, the trial court did not err in granting summary judgment on Jackson's breach-of-contract claims.

## C. Breach-of-fiduciary-duty claims against the NAACP, the Houston Branch, and Smith

The elements of a claim for breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The term "fiduciary" applies to a person who occupies a position of peculiar confidence towards another. *See Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App,—Houston [14th Dist.] 2007, pet. denied). In certain formal relationships, such as attorney-client, partnership, or trustee relationships, a fiduciary duty arises as a matter of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (per curiam); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). An informal fiduciary duty may arise from "a moral, social, domestic or purely personal relationship of trust and confidence." *Meyer*, 167 S.W.3d at 331; *see Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962).

However, an informal fiduciary relationship will not be created lightly. *Meyer*, 167 S.W.3d at 331; *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). "It is well settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'"

12

*Meyer*, 167 S.W.3d at 330 (quoting *Schlumberger Tech.*, 959 S.W.2d at 176–77). An informal fiduciary relationship exists where influence has been acquired and abused, and confidence has been reposed and betrayed. *See Lee*, 286 S.W.3d at 14; *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 638 (Tex. App.— Houston [1st Dist.] 2002, pet. denied). A party claiming the existence of an informal fiduciary relationship must have been accustomed to being guided by the judgment or advice of the other. *Thigpen*, 363 S.W.2d at 253; *see also Lee*, 286 S.W.3d at 14 (citations omitted). The existence of an informal fiduciary relationship depends on the "actualities" of the particular relationship. *Thigpen*, 363 S.W.2d at 253.

When the underlying facts are undisputed, determining whether a fiduciary duty existed is a question of law. *Meyer*, 167 S.W.3d at 330. Texas appellate courts generally uphold the granting of no-evidence summary judgment regarding the nonexistence of informal fiduciary relationships when the undisputed evidence shows nothing more than a party's subjective trust of the other. *See, e.g., Garcia v. Vera,* 342 S.W.3d 721, 723–24 (Tex. App.—El Paso 2011, no pet.); *Jones v. Blume,* 196 S.W.3d 440, 449 (Tex. App.—Dallas 2006, pet. denied); *Prime Prods., Inc.,* 97 S.W.3d at 638.

In their motions for summary judgment, the NAACP, the Houston Branch, and Smith argued there was no evidence of the existence of the type of relationship between Jackson and any of them that would give rise to any fiduciary duty.[6] In her opposition and on appeal, Jackson argues that the Constitution, Bylaws, mission, and purpose of the NAACP establish an informal fiduciary relationship among the NAACP, the Branches, Smith, and members such as Jackson. Jackson

---

[6] In addition, the Houston Branch and Smith further argued there was no evidence that any breach of any fiduciary duty proximately caused Jackson to suffer compensable damages.

13

contends that members rely on the Constitution and decisions of the NAACP officers and trust that those decisions will be carried out for the best interests of the association. Jackson points to language in the Bylaws stating that Smith as Executive Director is responsible to the membership and to language in her employment contract with the Houston Branch establishing her duties to administer grants and financial policies and describing circumstances resulting in her termination.

Considering this evidence in the light most favorable to Jackson, it merely shows generalities regarding the relationships at issue. Jackson failed to submit any evidence "regarding the actualities" establishing the peculiar trust, influence, or confidence at issue in her alleged fiduciary relationships with the NAACP, the Houston Branch, or Smith. *See Garcia*, 342 S.W.3d at 724 (affirming no-evidence summary judgment on lack of fiduciary duty where plaintiff provided no examples of evidence of closeness of relationship, amount of time spent together, any engagement in prior business or financial transactions together, or previous reliance on the other party for advice). We conclude that the relationship between Jackson and the NAACP, the Houston Branch, or Smith based on membership in the association does not present the type of extraordinary trust-based or confidential relationship sufficient to give rise to informal fiduciary duties.

Jackson also contends that the NAACP, the Houston Branch, and Smith breached their formal duties of care, loyalty, and obedience to Jackson as corporate fiduciaries. Jackson cites *Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984), for the proposition that a corporate officer or board member owes the duty to exercise reasonable care when making decisions as a steward of the organization. Assuming without deciding solely for purposes of our analysis that formal fiduciary duties apply in the context of nonprofit

associations like the NAACP, such duties generally run to the organization, not to individual members or even to a majority of the members. *See id.* at 721–22 ("[T]he directors' duties of loyalty and care run to the corporation, not to individual shareholders or even to a majority of the shareholders."); *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) ("A director's fiduciary duty runs only to the corporation, not to individual shareholders or even to a majority of the shareholders." (citing *Gearhart Indus.*, 741 F.2d at 721)). Even if Jackson as an individual member could be owed such formal fiduciary duties, it is an organization's individual directors who owe such duties with regard to their directorial actions, not the NAACP or the Houston Branch as entities. *See Somers ex rel. EGL, Inc. v. Crane*, 295 S.W.3d 5, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (noting that "right to proceed" on breach-of-fiduciary-duty claim is "against an officer or former officer of a corporation"). Moreover, considered in the light most favorable to Jackson, the summary judgment record does not reflect that Smith was ever an officer or board member of the NAACP or the Houston Branch. *See Priddy v. Rawson*, 282 S.W.3d 588, 599–600 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). And "we find no evidence otherwise demonstrating the existence of a formal relationship upon which to base a fiduciary duty." *See id.* at 600.

We conclude there is no evidence that the NAACP, the Houston Branch, or Smith owed Jackson any fiduciary duty, whether based on an informal or formal relationship. Therefore, the trial court did not err in granting summary judgment on Jackson's breach-of-fiduciary-duty claims.

## D. Fraud claims against the NAACP, the Houston Branch, and Smith

The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker

15

knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as a result. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Fraud by nondisclosure is a subcategory of fraud. *Schlumberger Tech.*, 959 S.W.2d at 181. The elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001); *Schlumberger Tech.*, 959 S.W.2d at 181).

With regard to the NAACP, Jackson alleged fraud in connection with the NAACP's false representations of its mission and purpose. In its motion for summary judgment, the NAACP argued that there was no evidence of any actionable material misrepresentation contained in the aspirational language of the Constitution and Bylaws upon which Jackson could have justifiably relied on to her detriment; no evidence that the NAACP knew or was reckless as to whether its mission and purpose were false; and no evidence that it intended Jackson to act on said falsehoods. The NAACP also challenged Jackson's failure to provide any relevant context with regard to the alleged misrepresentations. However, both in

16

her opposition and on appeal, Jackson does not address whatsoever any fraud allegedly committed by the NAACP. She does not point to any evidence in an effort to raise a fact issue on material misrepresentation,[7] knowledge, or intent. By failing to present any evidence of the elements of fraud challenged by the NAACP in the trial court or any argument or authority on appeal, Jackson did not meet her summary judgment burden and has waived her fraud claim against the NAACP. *See* Tex. R. Civ. P. 166a(i); *McMahan*, 108 S.W.3d at 485*; see also Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 (Tex. 2002) (no-evidence summary judgment proper where response "was silent" as to reliance element of fraud). Therefore, the trial court did not err in granting summary judgment on Jackson's fraud claim against the NAACP.

With regard to the Houston Branch and Smith, Jackson alleged fraud based on the Houston Branch and Smith misrepresenting "the financial state of the Houston Branch when hiring" Jackson and "that employees whose grants expired and were not renewed had to be laid off." In their motion for summary judgment, the Houston Branch and Smith contended there was no evidence that they made any statements or misrepresentations regarding the Houston Branch's financial affairs during Jackson's interview. The Houston Branch and Smith also argued there was no evidence that the representation that the grant funding Jackson's employment expired on August 31, 2010 was false. Again, both in her opposition and on appeal, Jackson does not address or point to evidence of any misrepresentations with regard to the Houston Branch's financial state or to support how any representations regarding the expiration or renewal of the TAJF

---

[7] In essence, the NAACP challenged the first two elements of fraud. *See Shafaii Children's Trust & Party & Reception Ctr., Inc. v. W. Am. Ins. Co.*, 417 S.W.3d 614, 624 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (discussing how courts and Pattern Jury Charge often "group together" first two fraud elements).

17

grant funding Jackson's position were false. By failing to present any evidence of these alleged misrepresentations by the Houston Branch and Smith in the trial court or any argument or authority on appeal, Jackson did not meet her summary judgment burden and has waived her affirmative fraud claims against the Houston Branch and Smith. *See* Tex. R. Civ. P. 166a(i); *Johnson*, 73 S.W.3d at 211; *McMahan*, 108 S.W.3d at 485.

Jackson also alleged that the Houston Branch and Smith "fraudulently paid Jackson the incorrect salary based on her years of experience." With regard to Jackson's allegation of fraudulent underpayment, construed as a claim for fraud by nondisclosure, the Houston Branch and Smith argued that the TAJF grant study merely suggested and did not require any particular salary ranges for attorneys. The Houston Branch and Smith also asserted there was no evidence that they had any duty to disclose such information.

In her opposition and on appeal, Jackson points to evidence that Smith offered Jackson a staff attorney salary of $55,000 despite her approximately 15 years of experience. Jackson also proffers an undated document she describes as "TAJF's grant rules and regulations" to support that she should have been offered a salary of $82,500. At most, even construing the evidence in the light most favorable to Jackson, the TAJF's "grant rules and regulations" by their plain language identify "benchmarks" for attorney salaries at various experience levels.[8]

Even assuming without deciding solely for purposes of our analysis that the TAJF's recommended attorney salary range was a material fact the Houston Branch and Smith failed to disclose to Jackson, we conclude Jackson has not raised

---

[8] The summary judgment record also contains a TAJF Comparability Strategic Planning Committee Report dated March 18, 2008, which recommends setting aside funding in an attempt to increase salaries to attorneys and identifies "a benchmark for competitive salaries for attorneys."

a fact issue regarding any duty to disclose such fact. As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. *Bradford*, 48 S.W.3d at 755 (citing *Morris*, 981 S.W.2d at 674). Silence only may be equivalent to a false representation when the particular circumstances impose a duty on the party to speak and she deliberately remains silent. *Id.* We already have determined that Jackson did not raise a fact issue as to any fiduciary relationship between the Houston Branch or Smith and herself. *See Morris*, 981 S.W.2d at 674 ("Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship.").

Nevertheless, Jackson contends that showing a fiduciary relationship is not necessary. Although the Texas Supreme Court has not adopted any such general duty to disclose facts in a business or commercial setting,[9] our court recognizes that a duty to disclose may arise: when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth; when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.). But Jackson has failed to point to the existence of any particular facts or circumstances that might support imposition of such a duty here. Jackson has not explained what information the Houston Branch or Smith voluntarily disclosed such that there arose a duty to tell the whole truth, what earlier representation of the Houston Branch or Smith to Jackson was made misleading or untrue by new information, or what partial disclosure by the Houston Branch or Smith left Jackson with what

---

[9] *Bradford*, 48 S.W.3d at 755–56 (citing The Restatement (Second) of Torts § 551 (1977)).

false impression. For example, there is no evidence that the Houston Branch or Smith made any particular assurances with regard to the competitiveness of Smith's salary. There is no evidence that the Houston Branch or Smith voluntarily provided Jackson with any details about the particular BLS grant funding her salary or any TAJF grant for that matter. Nor did Jackson provide any evidence that she was left with a false impression by any partial disclosure of the Houston Branch or Smith with regard to her salary, much less one that "hindered Jackson's wage earning capacity." *Cf. Columbia/HCA Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 744–45 (Tex. App.—Waco 2002, no pet.) (fact issue existed on duty to disclose for fraud by nondisclosure where former employee was specifically told when hired that "he would participate in the Top Hat Plan and his interest would vest in six years" and defendants "made only a partial disclosure about the plan because they did not tell [him] about the rescission provision" that "conveyed a false impression to [him] about his financial future if he accepted the position").

We conclude there is no evidence that the Houston Branch and Smith owed Jackson a duty to disclose the attorney salary range recommended by the TAJF. Therefore, the trial court did not err in granting summary judgment on Jackson's fraud claims against the Houston Branch and Smith.

## E. Negligent-retention claim against the NAACP

While Texas Supreme Court has not "ruled definitively on the existence, elements, and scope" of negligent hiring, retention, and supervision claims, *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010), it has indicated that, to recover on these theories, a plaintiff must show not just negligent hiring practices, but rather harm caused by the employee's misconduct. *See Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (per curiam). This court has held that negligent hiring, retention, and supervision claims are all simple negligence causes

of action based on an employer's direct negligence rather than on vicarious liability. *See Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 (Tex. App.— Houston [14th Dist.] 1998, pet. denied). As with any negligence case, the plaintiff must prove the existence of circumstances giving rise to a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). The components of proximate cause are cause in fact and foreseeability. *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.— Houston [14th Dist.] 2005, no pet.) (citing *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)).

In its motion for summary judgment, the NAACP argued, assuming a negligent-retention cause of action exists, that there was no evidence the NAACP owed any duty to Jackson with respect to Smith. The NAACP further maintained there was no evidence of the elements of breach and proximate cause. In her opposition and on appeal, Jackson argues that the NAACP owed Jackson a "duty of protection against Smith" because "an employer owes the duty to fellow employees and to the public at large." Jackson also contends the NAACP had a fiduciary duty to her "as a member and an employee." Jackson argues that the NAACP breached its duties to Jackson by reinstating or failing to terminate Smith. To prove that Smith was unfit and incompetent and the NAACP had prior knowledge of Smith's fraudulent and negligent activities, Jackson points to the NAACP's 2006 audit, its 2006 audit results implementation plan recommending Smith be asked to resign, Smith's termination for theft of Houston Branch property, and the TAJF's suspension and nonrenewal of its grants to the NAACP.

Duty is the threshold inquiry and is a question of law for the court to decide

21

based upon facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). With regard to duty, the general rule is that there is no duty to protect another from the conduct of a third person unless a special relationship exists between the party and the third person that imposes a duty upon the party to control the third person's conduct. *See id.*; *Verinakis*, 987 S.W.2d at 97. One such special relationship is that between employer and employee. *Verinakis*, 987 S.W.2d at 97 (citing *Greater Houston Transp.*, 801 S.W.2d at 525). There are other situations where a special relationship exists that enlarges the duties of a party, such as "where there is a reasonable foreseeability of injury" involving "potential contact with particularly vulnerable individuals." *See Wise v. Complete Staffing Servs., Inc.*, 56 S.W.3d 900, 904 (Tex. App.—Texarkana 2001, no pet.); *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex. App.—Austin 1997, no writ) ("The heightened obligation in these cases, however, is predicated upon the entity's placing the tortfeasor into a special relationship of trust with a vulnerable group: a scoutmaster with young boys, a drug counselor with the family of a recovering addict, a nursing assistant with the elderly and infirm.").

We already have determined that Jackson has not raised a fact issue with regard to the existence of any fiduciary or confidential relationship among the NAACP, the Houston Branch, Smith, and herself. Jackson does not otherwise explain how, or provide any evidence that, she qualifies as a particularly vulnerable individual. In its summary judgment motion, the NAACP pointed out that Smith was hired and employed by the Houston Branch, not by the NAACP. In other words, the NAACP would not have any enlarged duty to Jackson or the general public based on an employer-employee relationship with Smith. However, we assume without deciding solely for purposes of our analysis that the evidence

raises a fact issue on whether the NAACP was Smith's employer or had a right to exercise control over her under a theory of negligent retention. The issue therefore is whether the circumstances presented raise a fact issue as to whether the NAACP owed a duty to Jackson to protect her from the conduct of its employee Smith.

Under the theory of negligent hiring, retention, or supervision, "an employer who negligently hires an incompetent or unfit individual may be directly liable to a third party whose injury was proximately caused by the employee's negligent or intentional act." *Verinakis*, 987 S.W.3d at 97. However, under such negligent-retention theory, "an employer's duty extends only to prevent the employee from causing *physical* harm to a third party." *McClure v. Kingwood Pines Hosp., L.L.C.*, No. 14-09-00339-CV, 2010 WL 3583193, at *2 (Tex. App.—Houston [14th Dist.] Sept. 16, 2010, pet. denied) (mem. op.) (emphasis in orig.) (citing *Verinakis*, 987 S.W.3d at 97–98) ("[T]he duty of the employer or contractee extends only to prevent the employee or independent contractor from causing physical harm to a third party.")); *see Latimer v. Mem'l Hermann Hosp. Sys.*, No. 14-09-00925-CV, 2011 WL 175504, at *3 (Tex. App.—Houston [14th Dist.] Jan. 20, 2011, no pet.) (mem. op.); *Doege v. Sid Peterson Mem'l Hosp.*, No. 04–04–00570–CV, 2005 WL 1521193, at *7 (Tex. App.—San Antonio June 29, 2005, pet. denied) (mem. op.); *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 496 (Tex. App.—Fort Worth 2002, no pet.); *Sibley v. Kaiser Found. Health Plan of Tex.*, 998 S.W.2d 399, 403–04 (Tex. App.—Texarkana 1999, no pet.); *accord Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 289–90 & n.8 (Tex. App.—Dallas 2015, no pet.) (economic loss rule barred individual plaintiff from recovering purely economic harm based on negligent hiring, supervision, and retention claim). Jackson did not allege or present any evidence indicating that the NAACP owed a duty to protect her against physical harm from Smith. Rather, Jackson described her injury as

23

"not being hired and not being reinstated."

Moreover, even if any such duty existed,[10] the NAACP additionally argued Jackson would have to establish that Smith committed an actionable tort against her before the NAACP could be held liable based on a negligent-retention cause of action. *See Gonzales v. Willis*, 995 S.W.2d 729, 739–40 (Tex. App.—San Antonio 1999, no pet.), *overruled in part on other grounds by Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004). Ultimately, we determine that none of Jackson's claims, including all of her tort claims against Smith, survives summary judgment. Under these circumstances, there is no separate actionable tort to support the negligent-retention claim against the NAACP. *See Latimer*, 2011 WL 175504, at *3 (affirming grant of traditional summary judgment on negligent-supervision claim where court affirmed summary judgment against plaintiff on all torts allegedly committed by employee (citing *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App.—Houston [1st Dist.] 2005, no pet.))); *see also Brown*, 178 S.W.3d at 384 ("To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff."); *accord McClure*, 2010 WL 3583193, at *2 n.7 ("Other courts have indicated that a negligent hiring or supervision claim may be permissible if the employee commits an actionable tort causing a 'legally compensable injury.'" (citing *Gonzales*, 995 S.W.2d at 739–40,

---

[10] In a recent case involving a traditional summary judgment, our court recognized a fact issue on duty where a company brought a claim for negligent retention against a staffing agency that had an agreement with the company to place agency employees at the company. The circumstances indicated that the agency failed to inform the company after it learned about its employee's criminal history of theft and the employee later embezzled $15 million from the company while working in the accounting department. *See Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 67 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In such case, the court did not cite or discuss *Verinakis*'s physical harm requirement or *McClure*, presumably because the company plaintiff could not bring such claim for bodily injury.

and *Brown*, 178 S.W.3d at 384)).

We conclude there is no evidence that the NAACP owed a duty to Jackson related to Smith.  In any event, we further conclude that the NAACP conclusively established that no separate actionable tort against Smith exists to support a negligent-retention claim.  Therefore, the trial court did not err in granting summary judgment against Jackson on her negligent-retention claim against the NAACP.

## F.  Defamation per se claims against the Houston Branch and Smith

To maintain a defamation action, a plaintiff must prove that the defendant: (1) published a statement of fact; (2) that was defamatory concerning the plaintiff; (3) while acting with actual malice if the plaintiff was a public official or public figure, or while acting with negligence if the plaintiff was a private individual, regarding the truth of the statement.  *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  Defamation per se refers to statements that are so obviously harmful to a person's reputation that general damages may be presumed.  *See Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013).  To be actionable, a statement must expressly or impliedly assert an objectively verifiable fact.  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990); *Bentley v. Bunton*, 94 S.W.3d 561, 580–81 (Tex. 2002).  Whether a publication is an actionable statement of fact is a question of law.  *See Bentley*, 94 S.W.3d at 580.  To make this determination, we consider the verifiability of the statement and the entire context in which the statement was made.  *Id.* at 581, 583.  Whether a publication is actionable depends on a reasonable person's perception, not on the perception of the plaintiff, of the entirety of the publication and not merely individual statements. *See id.* at 579; *see also Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987) (we construe the statement as a whole in light of surrounding

circumstances, based upon how person of ordinary intelligence would perceive the entire statement).

In their motion for summary judgment, the Houston Branch and Smith argued, even assuming they made statements that Jackson "was a problem employee who caused morale problems" and that she was a "disgruntled employee," neither statement presents an actionable false statement of fact as a matter of law.[11] They contended that both statements alleged to have been made by Smith are simply expressions of opinion protected by the First Amendment and by article I, section 8, of the Texas Constitution and therefore not actionable. In particular, the Houston Branch and Smith pointed to cases where negative general statements about a person's work performance were found to not be actionable. For example, in *Brown v. Swett & Crawford of Texas*, the First Court of Appeals concluded that the statement that an employee was a "walking E & O" clearly expressed the speaker's opinion that the employee was likely to perform his work in such a manner that the employer's errors and omissions insurer would be required to provide coverage when he made a mistake. 178 S.W.3d at 383. The *Brown* court also concluded that there were "no implied, but verifiable, facts" in such statement. *Id.* Therefore, the statement was not actionable. *Id.*; *see Associated Press v. Cook*, 17S.W.3d 447, 454 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (statements that plaintiff officer was "a blight on law enforcement" and that he "has caused unbelievable problems" were assertions of protected opinion and not actionable statements of fact).

Similarly, we conclude that Smith's statement that Jackson was a "problem employee" who "was causing morale problems," while certainly objectionable to

---

[11] Additionally, the Houston Branch and Smith argued that Smith's "disgruntled employee" statement was plainly true.

Jackson, falls into the category of protected opinion. Considering the evidence in the light most favorable to Jackson, Smith's comment implied, and Vickery in fact took Smith to mean, that Jackson was an employee who was difficult to deal with and was causing morale problems. Smith's statement implied that Jackson was performing at work in such a way that she was having an adverse effect on her coworkers. However, a statement implying that an employee is incompetent in some way at her job is not a statement of fact, but rather a nonactionable opinion. *See Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.) (statement that coworker did not want to interact with people "like" plaintiff on the "third floor" and would "run" if he had to take anything down there implied incompetence but was not actionable statement of fact (citing *Brown*, 138 S.W.3d at 383)). Nor did Smith's "general criticism" of Jackson as such a "problem employee" "causing morale problems" indicate any objectively verifiable details that would give rise to an actionable statement of fact. *See id.*; *see also Transp. Care Servs. Corp. v. Shaw*, No. 02–12–00334–CV, 2013 WL 5433991, at *3 (Tex. App.—Fort Worth Sept. 26, 2013, no pet.) (mem. op.) ("There's a lot that y'all don't know" did not imply undisclosed facts); *Cook*, 17 S.W.3d at 454 (statement that plaintiff officer's departure from law enforcement "was a culmination of a lot of things, things too numerous to discuss" was assertion of protected opinion).

Nevertheless, Jackson asserts, in context, Smith's statement clearly implies an assertion of fact concerning Jackson that is objectively verifiable. However, the entire context and surrounding circumstances indicate otherwise. Smith directed this particular comment to Vickery, who had called Smith to discuss grant concerns expressed to him by Jackson. Vickery clearly had experience in making such calls and, as a former executive director of a nonprofit, understood that such

27

situations can involve "tension between executive director and employees or management and staff." Most of the discussion involved the status of the grant funds as Smith attempted to allay any concerns. Moreover, there was no "elaboration" on Smith's statement and Jackson has not provided any further explanation of the "morale problems." *See Transp. Care*, 2013 WL 5433991, at *3. Under these circumstances, based upon a reasonable person's perception of the publication as a whole, Smith's statement to Vickery is not actionable.

Next, we consider the statement by Smith as quoted in the July 2011 Houston Chronicle article—that Jackson was a "disgruntled employee." Like Smith's statement that Jackson was a "problem employee" who caused morale problems, Smith's "disgruntled employee" comment amounted to her protected expression of opinion regarding Jackson's discontented attitude in connection with her employment. *See Robertson*, 190 S.W.3d at 903; *Brown*, 178 S.W.3d at 383; *Cook*, 17 S.W.3d at 454. Moreover, Smith's description of Jackson as a "disgruntled employee" involved general criticism not linked to any objectively verifiable details. *See Shaw*, 2013 WL 5433991, at *3; *Robertson*, 190 S.W.3d at 903; *Cook*, 17 S.W.3d at 454.

Jackson emphasizes that the timing of Smith's "disgruntled employee" comment is "critical" to our analysis. The context and surrounding circumstances of the statement indicate that Smith was responding to a request for comment about Jackson's having filed her lawsuit against Smith, the NAACP, and the Houston Branch in federal court. The news article provided details of recent events involving Smith, as well as various of the allegations levied against Smith in Jackson's lawsuit. Under these circumstances and considering the whole publication, Smith's "disgruntled employee" comment represented her purely subjective assessment of Jackson, not susceptible of being proven objectively true

28

or false. Nor did Smith's assertion imply the existence of undisclosed facts or misconstrue the facts. *See Bentley*, 94 S.W.3d at 583–84. Indeed, the context here instead reinforced the reasonable reader's ability to evaluate all the facts as provided in the news article and either accept or reject Smith's opinion of Jackson as a "disgruntled employee." *See Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. App.—Fort Worth 1999, no pet.) (statements in "20/20" news report program that plaintiffs—nursing home owners—were responsible for patient abuse and had engaged in "profiteering," based on context and viewed in light of entirety of report, were protected opinions that would not support defamation action).

Therefore, we conclude that the two opinions expressed by Smith and complained of by Jackson are not actionable as defamatory statements as a matter of law. Because the Houston Branch and Smith conclusively negated, and Jackson did not otherwise raise a fact issue on, an essential element of Jackson's defamation per se claims, we conclude that the trial court did not err by granting their motion for summary judgment.[12]

## G. Access to record and books claim against the Houston Branch and Smith

Jackson alleged that the Houston Branch and Smith were liable for failing to adhere to section 252.010 of the Texas Business Organizations Code in not allowing members to inspect the financial records of the Houston Branch. *See* Tex. Bus. Org. Code § 252.010 (West 2012). In their motion for summary judgment, the Houston Branch and Smith argued that Jackson did not have standing to assert such a claim because she was no longer a member of the

---

[12] We need not reach the Houston Branch and Smith's argument that they conclusively established the truth of Smith's "disgruntled employee" statement. *See* Tex. R. App. P. 47.1; *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 429 (Tex. 2000).

NAACP or, as a corollary, the Houston Branch.

Section 252.010 expressly provides that nonprofit associations "shall keep correct and complete books and records of account for at least three years after the end of each fiscal year and shall make the books and records available on request to *members* of the association for inspection and copying." *Id.* § 252.010(a). Assuming without deciding solely for purposes of our analysis that section 252.010 provides for and confers standing to pursue this cause of action, a plaintiff would need to be a "member of the association" to properly bring and maintain a claim. *See id.*; *In Interest of K.S.*, No. 14-15-00008-CV, 2016 WL 1660366, at *3 (Tex. App.—Houston [14th Dist.] Apr. 26, 2016, pet. denied) (mem. op.) ("When standing is conferred by statute, we use that statutory framework to analyze whether the petition has been filed by a proper party.").

Standing is determined as of the time that suit was filed in the trial court. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993); *In re Vogel*, 261 S.W.3d 917, 921 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Considering the evidence in the light most favorable to Jackson, she became a member of the NAACP in September 2010. Jackson was a member in April 2011 when she sent her email to Smith requesting access to the Houston Branch's financial audits. The last day Jackson that was a member of the NAACP was October 31, 2011. However, Jackson did not file her claim pursuant to section 252.010 against the Houston Branch and Smith until January 15, 2014, long after Jackson's membership lapsed. We agree with the trial court that the Houston Branch and Smith conclusively established that Jackson did not have standing to bring this claim. Therefore, we conclude that the trial court did not err in granting summary judgment against Jackson on her claim pursuant to section 252.010 against the Houston Branch and Smith.

30

We overrule Jackson's first, and fourth through eleventh issues.[13]

### III.   CONCLUSION

Having concluded that the trial court properly could grant summary judgment as to each of Jackson's claims against the NAACP, the Houston Branch, and Smith, we affirm the trial court's final summary judgment.


/s/    Marc W. Brown
Justice


Panel consists of Justices Jamison, Donovan, and Brown.

---

[13] Because we have otherwise affirmed summary judgment as to each of Jackson's claims, we need not address her second and third issues relating to a lack of preemption under the NLRA and judicial intervention. *See* Tex. R. App. P. 47.1. Further, with regard to Jackson's eleventh issue, in her brief she only discusses expulsion of the Houston Branch officers in conjunction with her judicial intervention issue. Therefore, we overrule such issue.